IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED
JUL -6 2016
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| ) | NO. |
| vs. ) | |
| ) | 4:16CR288 SNLJ/SPM |
| TANYA LACHELL SHIELDS, ) | |
| Defendant. ) | |

## INDICTMENT

The Grand Jury charges that:

### Background

1. At all times relevant to this indictment, defendant Tanya Lachell Shields was a resident of St. Louis, Missouri, within the Eastern District of Missouri.

2. At all times relevant to this indictment, Kidz in Action was a child care facility, located at 2554 Palm Street, St. Louis, Missouri. At all relevant times, Shields was the sole owner and operator of Kidz in Action and was responsible for billing for the services provided by Kidz in Action.

### Relevant Child Care Assistance Program Provisions

3. The Child Care and Development Block Grant Act provides federal block grants to states, territories, and tribes for child care assistance to low income families. The United States Department of Health and Human Services, Office of the Administration for Children and Families, administers the Child Care and Development Fund ("CCDF") at the federal level. The stated purpose of the CCDF is to enable low-income families to obtain and retain employment or the skills and education necessary to obtain employment.

4. The Missouri Department of Social Services ("DSS"), Family Support Division ("FSD"), is responsible for the Child Care and Development Program in Missouri. Missouri contributes to the child care assistance program through its Early Childhood and Development Fund and state general revenue.

Eligibility

5. Each state administering child care assistance programs, under a federal CCDF grant, determines the eligibility requirements for families within the state. To be eligible for the Missouri Child Care Assistance program, applicants must be low-income, have children, and be working, disabled, or enrolled in qualified education or job training programs. When an individual is found eligible for the child care assistance program, DSS will provide financial assistance by paying the full or partial child care costs.

## COUNTS 1-4
### Title 18, United States Code, Section 641 and Section 2
### Theft of Government Property or Funds

6. Paragraphs 1 through 5 are incorporated by reference as if fully set out herein.

Child Care Providers

7. Child care providers must apply to DSS in order to receive payments from state child care assistance programs. On or about June 20, 2012, Shields signed a Child Care Provider Agreement with DSS, in which Shields agreed to provide child care at Kidz in Action for qualified children.

8. Per the provider agreement, Shields was responsible for maintaining adequate, legible, genuine, current, and complete records of child care services rendered at Kidz in Action. Shields was also responsible for certifying the daily attendance of each child for which a claim was submitted. Proper certification included the name of the child, the date of the child's

2

attendance, the arrival and departure times of the child, and the signature of the parent or adult designee (may not be an employee or operator of the facility) certifying the date and time of attendance.

9. Per the provider agreement, Shields was required to submit invoices to DSS via the Child Care On-Line Invoicing System ("CCOIS"). Based on these invoices, DSS caused payments to be made by direct deposit into Shields' bank account at US Bank (account number ending in 0238) for services provided by Kidz in Action.

10. On or about June 7, 2013, the Department of Public Safety for the City of St. Louis condemned the building at 2554 Palm Street for safety violations. As a result, no children were cared for at Kidz in Action while the building was closed. The building did not reopen until August 19, 2013.

## DESCRIPTION OF FRAUD

11. During the period between June 8, 2013 and August 19, 2013, Shields submitted invoices to DSS for day care services for 135 children, thereby fraudulently representing that these children had received care at Kidz in Action. For the months of June 2013, July 2013, and August 2013, Shields was paid $37,429.29 from DSS based on the false and fraudulent invoices that she submitted. Of the 135 children Shields certified as in attendance at Kidz in Action, 22 of the 135 children were certified as attending other child care facilities.

12. On about the dates listed below, within the Eastern District of Missouri,

**TANYA LACHELL SHIELDS,**

the defendant herein, did embezzle, steal, purloin, and knowingly convert to her use money and items of the United States and of any department or agency thereof, and any property made or

3

being made under contract for the United States and any department or agency thereof, to wit: government funds, in excess of $1000, in the amounts listed below:

| COUNT | PAYMENT DATE | PAID AMOUNT |
| --- | --- | --- |
| 1 | August 12, 2013 | $5,205.04 |
| 2 | August 21, 2013 | $4593.05 |
| 3 | September 10, 2013 | $19,855.69 |
| 4 | September 17, 2013 | $5,569.76 |

In violation of Title 18, United States Code, Section 641 and Section 2.

### COUNT 5
### Title 18, United States Code, Section 641 and Section 2
### Theft of Government Property or Funds

The Grand Jury further charges that:

13. Paragraphs 1-5 are incorporated by reference as if fully set out herein.

Application for Child Care Assistance

14. To receive child care assistance for his or her child, a parent must submit an application, in-person, online, or by mail, to a local FSD office. During the application process, the applicant completes and signs a Child Care Application or a Child Care Reapplication/ Review Form. The applicant must provide his or her contact information, the names of the children, the names and addresses of the child care providers, and the need for child care. By signing the Child Care Application or Child Care Reapplication/Review Form, the applicant certifies that the answers he or she provided are true, correct, and complete, that the applicant agrees to provide additional verification or information as requested, and that the applicant understands his or her statements are subject to investigation and verification.

4

15. The applicant for child care assistance is also interviewed as part of the application process. After the interview, an Interview Summary is generated, which the applicant must certify. The Interview Summary contains the applicant's contact information, the names of the children, and the stated child care need. By signing the Interview Summary, the applicant certifies that the answers he or she provided are true, accurate, and complete.

Child Care Verification and Reimbursement

16. The FSD office requires verification of child care need. In general, verification requires proof of work or school schedule, and for college students, proof of financial aid.

**DESCRIPTION OF FRAUD**

17. On or about June 25, 2015, Shields submitted a Child Care Application/Eligibility Statement for two of her children. As part of the application process, Shields submitted a verification letter, stating that she was an employee of Hampton Kiddie Corner, a child care facility. The verification letter contained a computer generated signature of the director of Hampton Kiddie Corner and stated that Shields began her employment on June 29, 2015 and worked from 12:00 p.m. to 5:00 p.m.

18. As further verification of her employment, on July 13, 2015, Shields provided a work schedule, purportedly signed by the director of Hampton Kiddie Corner. The schedule indicated that Shields worked from 4:00 p.m. to 9:00 p.m. Sunday to Thursday. At the time Shields submitted documents related to her employment, she knew that the documents contained false information and would be used by DSS to determine her eligibility for subsidized child care.

19. On or about August 12, 2015, Hampton Kiddie Corner closed. Although required to do so, Shields never informed DSS that she was no longer employed at Hampton Kiddie

5

Corner. Nor is there any record that Shields was employed elsewhere or enrolled in school or receiving employment training from August 2015 to April 2016.

20. From July 2015 to April 2016, Shields' children received subsidized child care services at Queens and Kings Day Care. Child care payments, totaling $5,371.00 were made on the behalf of Shields' children during the service months between July 2015 and April 2016.

21. In or about February and March 2016, within the Eastern District of Missouri,

**TANYA LACHELL SHIELDS,**

the defendant herein, did embezzle, steal, purloin, and knowingly convert to her use money and items of the United States and of any department or agency thereof, and any property made or being made under contract for the United States and any department or agency thereof, to wit: government funds totaling $1804.00, received in two payments ($861.00 and $943.00).

In violation of Title 18, United States Code, Section 641 and Section 2.

A TRUE BILL.

_____
FOREPERSON

RICHARD G. CALLAHAN
United States Attorney

_____
DOROTHY L. McMURTRY, #37727MO
Assistant United States Attorney

6